KETHLEDGE, Circuit Judge,
concurring in part and dissenting in part. I join all but part II.B of the court’s opinion. I dissent from that part because I do not think the government proved a case of mail fraud.
That is not to say it could not have. The government had ample proof that Lay defrauded the Bureau by misrepresenting his intentions with respect to the 150% leverage limitation, and that he did so in order to induce the Bureau to part with its money. The only remaining element of mail fraud was an interstate mailing “in furtherance of the scheme[.]” United States v. Prince, 214 F.3d 740, 748 (6th Cir.2000); see also 18 U.S.C. § 1341 (a mailing must be “for the purpose of executing such scheme or artifice” to defraud). Given the abundance of proof as to Lay’s misrepresentations generally, one might expect simply to see proof that one of them was mailed.
But we do not see that. Instead, the charged mailings are “trade confirmation slips,” which one bank mailed to another as a result of trades that Lay authorized for the Active Duration Fund. No one contends that the slips themselves contained any misrepresentations or that they played any role whatever in parting the Bureau from its money. Instead, the slips simply confirmed trades that Lay had made on the open market. The question, then, is whether the government proved the slips somehow furthered the fraud.
The government’s explanation of this point is amorphous at best. It observes, correctly, that post-fraud mailings can further the scheme if “designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.” United States v. Lane, 474 U.S. 438, 451, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (internal quotation marks omitted); see also Majority Op. at 447. The government contends the slips had this effect because they ensured that the Fund would not be assessed a five-percent penalty for failed trades. Had those penalties been assessed, the government says, Lay would have “lost [the Bureau’s] confidence and business.” Gov’t Br. at 52. The government’s explanation more or less trails off there; but we are left to infer, apparently, that had the Bureau lost confidence in Lay, it would have begun asking questions, whose answers might have led to still other questions, which in turn could have uncovered the fraud. So, in the government’s view, the slips furthered the scheme.
The question is one of degree. In my view, the bank slips were too remote from the antecedent fraud, and too speculative in their effects, to support a finding that they were “designed to lull the victims into a false sense of security[J” Lane, 474 U.S. at 451, 106 S.Ct. 725. If the slips here were so designed, so too were Lay’s annual submissions to the SEC to retain his status as a registered investment ad-visor, see 17 C.F.R. § 275.204-1; since absent that status the Bureau surely would have lost confidence in him. That is an awfully broad conception of mailings in furtherance of the fraudulent scheme. At some point the element exists only in theory, rather than in fact.
That said, I agree with the majority’s affirmance of Lay’s conviction for conspiracy to commit mail fraud and wire fraud. On that charge, the government did identify an overt act that concealed the fraudulent scheme from the Bureau. And my agreement on the conspiracy charge *450 means that, even under my proposed disposition of this case, Lay’s sentence would remain the same. The district court sentenced Lay to 60 months for the investment-adviser conviction, and 144 months for each of the other convictions — including the conspiracy one — with all sentences running concurrently. Even absent the mail-fraud convictions, therefore, Lay’s sentence would be 144 months. Thus, while I respectfully dissent from the majority’s affirmance of Lay’s mail-fraud convictions, I join its affirmance of his sentence.
But my point, in closing, remains a practical one: The government would make its task easier in mail- and wire-fraud cases if it would choose, as its charged communication, a blood relative of the fraud, rather than a second cousin by marriage. Reasonable jurists can disagree as to the outcome in cases like this one. But one wonders why they should have to.
For these reasons, I concur in part and dissent in part.